# In the United States Court of Federal Claims

No. 11-439 L

(Filed December 4, 2015)

| | |
|---|---|
| ROBERT A. LUCIANO, JR., Trustee of the Robert A. Luciano Jr. Revocable Trust Dated February 27, 1995,<br><br>   Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>   Defendant. | Jurisdiction; Taking; Accrual of Claim; Statute of Limitations |

*Richard H. Hart, Jr.*, Tahoe City, CA, for plaintiff.

*William J. Shapiro*, Environment and Natural Resources Div., Natural Resources Section, United States Department of Justice, Sacramento, CA, with whom appeared *John C. Cruden*, Assistant Attorney General for defendant. *Emily M. Meeker*, Sacramento, CA, of counsel.

## OPINION

**Merow**, *Senior Judge*

On July 5, 2011, plaintiff filed a complaint alleging that the defendant had exacted takings of his water rights and property adjacent to the Plumas National Forest, in Plumas County, California. *See* Doc. 1. This court previously granted summary judgment in favor of the defendant on the water rights claim, ruling that plaintiff's claim was unripe. *See* Doc. 72.

On September 18, 2015, the defendant filed a motion for summary judgment on the remaining property claim, asserting that plaintiff lacks standing to bring the claim and that, in any event, the claim is barred by the applicable six-year statute of limitations. *See* Doc. 107 at 1-2.

**I.     RELEVANT FACTS**

This dispute involves a parcel of land in Plumas County that plaintiff purchased in 1995. *See* Doc. 1 at 7, ¶ 23. The land was part of a homestead granted to Mr. Ezra Culver in 1882. *See id.* at 4, ¶ 11. Plaintiff claims that he purchased the property with the belief that the boundaries of the original homestead were consistent with what appeared in his deed. *See id.* at 7, ¶ 23. The government claims that the original boundaries of the homestead are irrelevant because it resurveyed the property in 1993, and the boundary lines established by that survey establish the legal boundaries of plaintiff's property. *See* Doc. 107 at 20.

The 1993 survey was filed with the recorder's office on March 5, 1993, and appears in Book 9 at page 107. *See* Doc. 107-1 at 21 (Exhibit 2). The evidence further establishes that plaintiff's deed incorporated the 1993 survey by reference. Plaintiff's deed is dated September 18, 1995. *See* Doc. 107-2 at 10 (Exhibit 9). The subject property is described by specific reference to a recorded map titled "'Mohawk Valley Properties Unit No. 2, Phase one,' filed May 24, 1995." *See id.* at 11. In describing the boundaries of the property, the map cites the 1993 survey, referencing the relevant book and page numbers. *See* Doc. 107-2 at 15 (Exhibit 10).

Although the exact date is not clear, at some point following the survey, the defendant erected a fence marking the boundary line, which bisected a cabin that was allegedly part of the original Culver homestead. *See* Doc. 107 at 11-12. A second structure, a root cellar, was located entirely on the defendant's side of the boundary line. *See id.*

On January 13, 2000, Plaintiff sent a letter to the defendant in which he acknowledged the 1993 survey and the boundary line dispute. *See* Doc. 107-1 at 53 (Exhibit 7). He wrote: "A relatively recent survey (9RS107 dated March 5, 1993) regarding delineating the section lines and establishing the forest service boundary set the North line of the F/S boundary (South line of lot 2) bisecting the old homestead house (see photo below—from the SE corner of lot 2 looking west along the P/L)[sic]." *Id.*

This letter marked the beginning of years of correspondence between the parties. Plaintiff claims that the defendant entered into an agreement with him to resolve the boundary line dispute by letter dated June 22, 2004. *See* Doc. 109 at 27. In its entirety, the June 22, 2004 letter from Mr. James M. Peña reads as follows:

> This letter is in response to your April 5, 2004 letter and recent inquiry with our Regional Office in Vallejo, California regarding the resolution of the encroachment.
>
> The workload for this year has been established and we are unable to start on any new projects. I have directed my staff to include your proposal to resolve your encroachment in our program of work for the ensuing years.
>
> We look forward to resolving the encroachment. Please contact Fred Krueger, Public Service Staff Officer, 530-283-7840 if you have any questions.

Doc. 110-2 at 2 (Exhibit 10).

Plaintiff then claims that the defendant refused to abide by that agreement by letter dated March 1, 2010. *See* Doc. 109 at 27. In that letter, Ms. Alice B. Carlton wrote, in part:

> After considering your land exchange proposal . . ., I have determined it is not in the best interest of the public for the Forest Service to enter into this land exchange. . . . This decision affirms a previous denial of this proposal, issued to you by Acting Forest Supervisor Chris Knopp, on April 24th, 2007. In addition, the Forest denied your similar requests for exchanges of other privately held parcels in 2000 and 2004. Please understand the Forest has no interest in conveying the 40 acre parcel adjacent to your property.

Doc. 107-3 at 17 (Exhibit 20).

## II.   ANALYSIS

Plaintiff's claim is subject to a six-year statute of limitations, as set forth in 28 U.S.C. § 2501, which states: "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." This limitation is jurisdictional in nature, and if plaintiff fails to file a claim within six years, this court is without authority to consider it. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133-136 (2008).

A claim against the government, "including takings claims, 'first accrues' 'only when all the events which fix the government's alleged liability have occurred *and* the plaintiff was or should have been aware of their existence.'" *Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340, 1359 (Fed. Cir. 2013) (citing *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988)); *see also Ingrum v. United States*, 560 F.3d 1311, 1314 (Fed. Cir. 2009) (stating that "a claim alleging a Fifth Amendment taking accrues when the act that constitutes the taking occurs").

Plaintiff asserts that any claim he had was "unknowable" before he became aware of the fence bisecting the cabin in the winter of 2000. *See* Doc. 109 at 25. And in fact, plaintiff argues that his claim did not accrue until 2010, when the defendant supposedly breached its alleged agreement to resolve the boundary dispute. *See id.* at 23.

As an initial matter, Mr. Peña's letter does not constitute a binding agreement. The only part of the letter that the court can imagine plaintiff means to suggest is an agreement is the statement: "We look forward to resolving the encroachment." *See* Doc. 110-2 at 2 (Exhibit 10). It is axiomatic that a contract with the government requires "'mutual intent to contract including an offer and acceptance, consideration, and a Government representative who had actual authority to bind the Government.'" *La Van v. United States*, 382 F.3d 1340, 1346 (Fed. Cir. 2004) (quoting *Cal. Fed. Bank v. United States*, 245 F.3d 1342, 1346 (Fed. Cir. 2001)). Mr. Peña's cordial expression of a willingness to resolve the disagreement does not establish any of these elements. Quite to the contrary, the letter otherwise makes clear that Mr. Peña's office has not begun consideration of, much less accepted or agreed to, plaintiff's proposal.

And Ms. Carlton's letter dated March 1, 2010, states in no uncertain terms that the defendant had rejected plaintiff's proposals on several earlier occasions. Even if Mr. Peña's letter had given plaintiff a justifiable reason to delay filing a complaint, plaintiff offers no particular reason why the 2000, 2004 or 2007 rejections did not trigger accrual.

Furthermore, it is unlikely that plaintiff would not be charged with knowledge of the survey in 1995, as it was incorporated into his deed to the property. But even assuming plaintiff's theory is correct, that his claim accrued no earlier than when he first learned of the boundary problem in 2000, the complaint he filed in 2011 was long outside the statutory period.

Plaintiff contends that even if his claim accrued in 2000 his complaint was timely pursuant to what he calls the "accrual suspension doctrine," applied by the Federal Circuit in *Applegate v. United States*, 25 F.3d 1579 (Fed. Cir. 1994). *See* Doc. 109 at 26-28. The plaintiffs in *Applegate* claimed a taking related to beach erosion caused by a government harbor construction project. *See* 25 F.3d at 1580. The court held that the accrual of plaintiffs' claims was delayed "due to both the very gradual nature of this particular continuous physical process and the Corps' promises" to mitigate the damage. *Id.* at 1583. This case involves neither a gradual physical process, nor a series of promises to mitigate damage. As such, the principle of *Applegate* has no application here.

Plaintiff's complaint, therefore, was filed more than five years beyond the statutory period.

## III. CONCLUSION

Because plaintiff's complaint was filed out of time, this court has no jurisdiction to consider his claims. The defendant's motion for summary judgment is, hereby, **GRANTED**. Plaintiff's complaint is **DISMISSED**. The clerk of court is directed to enter judgment accordingly.

s/ James F. Merow<br>
James F. Merow<br>
Senior Judge